## Converse & Co. v. J. McKee.

On the trial of the right of property, taken in execution, the defendant in execution is a competent witness in behalf of the claimant.

Where the defendant offered to prove by a witness, that a writing shown to him and purporting to be a balance sheet or transcript of balances of accounts on the books of the firm of B. & McK. at the time of levy, was a true and correct transcript of such balances taken from the said books by him, and of which he had been the keeper, and that the several items of the same were correct, both of his knowledge and from the books, to which proof by the witness and to any reference to said balance sheet plaintiffs objected, because the books themselves were the best evidence of the facts sought to be proved ; which objection was overruled by the Court, and the witness was permitted to read the several items therein contained, and to prove their truth from his recollection, and that they were taken directly from the books ; it was held there was no error.

Remaining in possession of personal property by the vendor, though a badge or presumption of fraud, is not conclusive of fraud, and the vendee may prove that the purchase was made in good faith.

See this case as to a levy on partnership property for a debt of one of the firm.

It may be proper here to notice that the charge of the Court now complained of, was contained in the general charge to the jury, and no exception or objection taken to it at the time ; and if there had been anything in the objection, it might well be answered that it was not made in the Court below, and ought not to be heard here.

The doctrine is too well settled to be now questioned, that partnership debts claim a priority of payment out of the partnership effects, before the individual debt of one of the members of the firm.

Appeal from Harris. The bill of exceptions read as follows : "Also, the claimant offered to prove by said Bailey, that a writing shown to him," &c., (same as in the second paragraph of the syllabus of this report.) The balance sheet showed a balance in favor of the partnership, of $3,253, not including claims to the amount of $831 26 marked doubtful, nor an item entered, "By railroad orders not above $140 10." Among the claims considered good was one against Bailey for $2,229 16, which, according to the testimony, was made up by assumptions on the part of Bailey & McKee, of individual debts of Bailey. Bailey, however, testified "that the assets of the firm were in-

sufficient to pay the liabilities, if the firm business had been closed at the time of the levy."

The Sheriff who made the levy testified, that on the evening of the 7th of Sept. he went to the store of Bailey & McKee and declared a levy of the execution upon the interest of James Bailey in the goods of the store; that the goods were pointed out by the attorney of the plaintiff; that McKee agreed to make out an inventory of the goods for him; and that he left the goods ·without interruption, on account of the instructions of the plaintiffs' attorney, who told him in the presence of McKee, that he expected the execution would be arranged, and that he might wait further instructions; that McKee and the plaintiffs' attorney then agreed that McKee should furnish an inventory of the goods; and they left; that on the 11th, in obedience to the further instructions of plaintiffs' attorney, he proceeded to take an inventory of the goods, and that the same were still in the store; that McKee had told him from time to time that he intended to replevy them; and that they were left until the 16th, when he closed the doors and took possession, giving McKee notice that he held joint possession with him of the interest of Bailey. Cross-examined—J. W. Henderson, as attorney for McKee, gave him notice on the 11th that the goods belonged to McKee, and that if he levied he did so at his peril.

The attorney of the plaintiffs corroborated the above statement, and in addition thereto stated that he spoke with McKee, who was present; that McKee asked the amount of the two executions, and that he told him they were over $600; and that McKee said that rather than have any trouble about them they would settle them; that McKee promised, as he understood him, to make out an inventory for the Sheriff; and he instructed the Sheriff, on account of what passed between McKee and himself, and Bailey and witness's partner, that he expected the executions would be settled, and that McKee would make out an inventory, and that he could leave the goods as they were; that the Sheriff left the goods in that position, notifying McKee that he had levied upon the interest of Bailey in the same.

The Sheriff's return corresponded with the above statements. It commenced as follows: " * * * and levied by virtue "of this execution, on Thursday, the 7th of September, upon all "the right, title and interest of James Bailey in the goods, wares "and merchandize in the store occupied by the firm of McKee "& Bailey, on Main street, Houston, which goods were left in "the possession of Jethro McKee and James Bailey until Mon- "day, the 11th," &c.

James Bailey, a witness for claimant, testified that he and McKee were partners in trade in Houston, for some time before and until the 9th of September, on which day, he, Bailey, sold out his interest, absolutely and entirely, to Jethro McKee, in consideration and for the purpose that McKee would and should pay the liabilities of the firm; and that from that date he had no further interest in the firm property, except that they were applied to the payment of the debts; that the goods levied on, and claimed by McKee, were the same which belonged to them as partners, and were in their joint possession on the 9th of September; that he was and is wholly insolvent, depending on his services as clerk for McKee for his support. Cross-ex-amined—that McKee paid him nothing; that the sale was made for the purpose of paying the debts of the firm; that nothing was said about whether if anything was left after the payment of the debts, he was to be entitled to a share of the surplus, because they estimated that there would be none; and he supposed at the time, if anything remained, it would go to the payment of the two executions; that those executions would take the balance, if any; that at the time of the sale no bal-ance sheet was made by him and McKee, &c.; that he remain-ed in same store with McKee as his clerk, &c.; that when he made the sale to McKee, the agreement was that he was to be his clerk and have a commission of five per cent. on all sales.

McKee, in his affidavit of claim, claimed the property as owner, and also as a member of the firm of Bailey & McKee to apply the same to payment of the partnership debts.

The Court instructed the jury as follows: The jury are in-

structed that a creditor has no legal lien on the personal property of his debtor, so as to prevent his making a fair sale in the usual course of trade, until the execution has been levied ; but after levy a sale by the debtor is invalid.

To constitute a valid levy the Sheriff must have taken possession of the goods in some way. A mere declaration by the Sheriff that he makes a levy is not sufficient ; and he ought to take control of the entire goods of the firm when he levies.

If, from the evidence, the jury believe that there had been no levy made on the goods at the time of the sale by Bailey to McKee, but that the sale was made for the purpose or intent of hindering, delaying or defrauding the creditors of Bailey in collecting their debts, such a sale would be fraudulent and void ; and its being made to his partner and his remaining in possession are badges of fraud, which may be rebutted by evidence showing the fairness of the transaction.

But, if the jury believe from the evidence that the sale was made, not for the purpose of defrauding Bailey's creditors, but in truth and fairness, for the purpose and consideration that McKee should settle the debts of the firm, and that those debts were equal, or nearly so, to the assets of the firm, and in order to protect the firm creditors from loss by a levy of the executions for Bailey's separate debt, and that the firm debts should be secured and paid in preference to his separate debts, such a sale would be valid and sufficient against the claim of plaintiff or any other creditor of Bailey who had not levied.

Whether the sale were fraudulent or not, if the jury believe from the evidence that the debts of the firm of Bailey & McKee, at the time of the levy, were equal to or greater than the value of the assets of the firm, and that Bailey was insolvent, then McKee being responsible for the partnership debts, had a right to control the assets of the firm for the purpose of paying the debts, and it was his duty to do so ; and in such case the firm property was not liable to the execution of any seperate creditor of Bailey.

Signed by the Judge—but no objection appeared of record,

further than that the plaintiffs asked certain instructions, all of which were given except the one noticed and copied in the Opinion.

*Palmer & Jordan,* for appellant.   I.  The first error assigned by appellants is the ruling of the Court on the objection to the evidence of the witness Bailey, introduced by defendant.   The objection was founded on the fact that Bailey was one of the defendants in execution and the vendor of the claimant, and was interested in the result of the trial.   (Goodacre v. Bream, Peake's N. P. C. 174 ; 1 Greenl. Ev. Sec. 347, and cases cited ; Id. 391, 395 ; 16 Johns. R. 70, Brown v. Nichols (and see 6 Mart. Lou. R. N. S. 458–60, Thompson v. Chavenau, as to incompetency of claimant's vendor) ; 9 Cowen, 631.)

II.  The second error assigned by plaintiffs is the overruling of the objection to the use of the paper purporting to be a transcript or balance sheet from the books of McKee & Bailey, and *permitting it to be referred to and read in the hearing of the jury by the witness Bailey,* and to go to the jury as evidence of the contents of said books, which were not produced, although the claimant was notified by plaintiffs in writing to produce them.   (1 Greenl. Ev. Sec. 82, 84, and cases cited ; 3 Monroe, 529–31, Boone v. Dyke's legatees ; Cowen & Hill's Notes, part 1st, p. 541 ; 4 Mass. R. 458, Prince v. Smith ; 9 Wheat. 558, Sebree v. Dorr ; 5 Serg. & Rawle, 226, Juniata Bank v. Brown ; 12 Id. 87, Smith v. Lane ; 9 Wheat. 581, Renner v. The Bank of Columbia ; 3 Wend. 296 ; 7 Id. 216 ; 13 Id. 505 ; 7 Cowen, 739 ; 11 Wheat. 79, Brooks v. Marburg ; 3 Day, R. 283, U. S. v. Porter ; 1 Monroe, 74, Condict v. Stevens ; 8 Pick. 329 ; 3 Monroe, 529–31 ; 4 Barn. & Adolph, 208 ; 6 Serg. & Rawle, 135, Curtis v. Patton.)

The rule as to showing the contents of documents by themselves only, has been applied to books of account by a number of cases.   Where their contents are sought to be proven, the books themselves must be produced or their loss or destruction shown by the party seeking to prove their contents, before sec-

ondary evidence of their contents will be admitted. (Cowen & Hill's Notes, part 1st, p. 549–50, 700 ; 1 Dallas, 310, Keely v. Ord ; 2 Bail. 394, Smith v. Pray ; 4 Yeates, 341, Cooper v. Morrel ; 4 Mass. R. 458, Prince v. Smith ; 4 Mart. Lou. R. N. S. 383, Herring v. Levy ; 5 Serg. & Rawle, 226, Juniata Bank v. Brown ; 2 Mart. Lou. R. N. S. 509, 10, Johnstone v. Breedlove *et al.*)

Even should the abstract be placed on the ground of notes or memoranda, still the witness should not have been permitted to read it to the jury ; nor should it have been admitted as evidence to the Court or jury in any sense. (5 Serg. & Rawle, 226 ; 3 Penn. R. 750, Doe v. Perkins.)

III. The third error assigned is the refusal of the Court to charge the jury that an intention to defraud could be presumed from the fact that the vendor remained in possession, and that the change of possession necessary to rebut the inference of an intention to defraud creditors must be substantial, *bona fide* and exclusive, as asked by plaintiffs. (4 Kent. 518, *et seq.* ; 1 Campb. N. P. 332, Wordell v. Smith ; 1 Esp. N. P. R. 205, Paget v. Perchard.)

IV. The fourth error assigned is the charge of the Court defining what constitutes a valid levy. This charge was defective in not defining what extent and manner of possession were necessary to complete the levy. It was also erroneous because inapplicable to the facts in evidence. The Sheriff not only declared a levy, but actually made a levy on the 7th of September, as shown by his return, and the testimony of the witnesses, and on the 11th took an inventory of the goods, and on the 16th took possession of them and closed the store. His omission to take an inventory on the 7th, and his delay in closing the store until the 16th, are explained by the facts in evidence.

A levy is an entire thing, and the inventory taken on the 11th and possession on the 16th related back, and took effect from the date of the original levy. But even should it be admitted that the levy was not completed until the 16th, McKee could derive no benefit from that fact. He was not an inno-

cent purchaser, without notice. He had full and actual knowledge of the execution and the proceedings under it, and therefore his purchase, if designed to hinder, delay or defraud the creditors of Bailey, was void as to all the existing creditors of Bailey, including the plaintiffs, whether the execution had been levied or not at the time of his purchase. (4 Kent. 513 ; 1 Burr. R. 474 ; 8 Johns. 446 ; 7 Serg. & Rawle, 89.)

But it is contended that the levy was completed and took effect in contemplation of law from the 7th of September. (3 Rawle, 401, 405–6, Wood v. Van Arsdale ; 1 Munf. (Va.) R. 269, Bullitt's Executors v. Winstons ; 3 Hill's S. C. R. 276, Moss v. Moore ; 11 Wend. 548, Butler v. Maynard.)

V. The concluding portion of the fourth paragraph of the charge of the Court implies and assumes that the plaintiffs had not levied at the time of the sale, and asserts in terms a fact material to the issue between the parties, which it was the province of the jury to determine.

VI. Had the jury been allowed to pass upon the question of fraud, they would undoubtedly have found that the sale was fraudulent and designed to defeat the execution of the plaintiffs ; but under the last charge of the Court the question became immaterial to the issue ; all inquiry upon the point was rendered unnecessary, and therefore it was not passed upon. This charge it is contended was manifestly erroneous, 1st. In withdrawing the question of fraud entirely from the jury, when the Court should have left it to them, and directed them to pass upon it.

2d. The charge was erroneous in stating the broad proposition, that Mckee as partner had a right to control the assets of the firm for the purpose of paying the debts of the firm, and a sale for that consideration was sufficient, although fraudulent, to defeat the execution of plaintiffs.

No doctrine is more clearly established or more universally admitted than that a creditor of one partner may take in execution that partner's interest in all the tangible property of the partnership, and sell it for the satisfaction of his execution.

(Collyer on Part. 473 ; 2 Johns. Ch. R. 508, Moody v. Payne ; Story on Part. Sec. 261, and cases cited ; 1 Salk. 392 ; 6 Munf. 113 ; 2 Raym. 871 ; Doug. 650 ; 15 Johns. 180 ; 1 Story Eq. 677–8 ; 22 Pick. 450 ; 4 Adolph & El. 127 ; 3 Bos. & Pul. 288, 389 ; 24 Wend. 389 ; 23 Id. 206 ; 2 McCord. 478 ; 1 J. J. Marsh. 217 ; 17 Johns. 525.)

The corpus of the partnership effects is joint property, and neither partner separately has anything in that corpus. (Story on Part. Sec. 261, Note 2 ; Taylor v. Field, 4 Vesey, 396.)

*Sabin & Henderson*, for appellee. There was no error in permitting James Bailey to testify, as the vendor of the appellee. His interest between the parties was equal. (8 Tex. R. 33 ; 17 Mass. R. 197 ; 9 Pick. R. 176 ; 3 Hill, R. 131 ; 9 Ala. R. 744 ; Cow. & Hill's notes to Phillips, p. 1543.)

The pretended levy by the Sheriff on the goods in controversy, on the 7th of Sept. 1854, at the door, was no levy, and the title passed to McKee before the inventory was made or any legal or valid levy was made on the goods. (8 Tex. R. 25 ; 8 B. Mon. R. 304 ; 2 Johns. Ch. R. 283 ; 19 Wend. R. 496 ; 3 Hill, S. C. R. 276 ; 7 Ala. R. 493 ; 8 Dana, R. 287.)

McKee himself was a creditor of the firm and was liable for all the debts, and he had a perfect right to protect himself and the debts for which he was liable. (11 Wend. 240 ; 12 An. Dig. p. 287, 465.

At Common Law a partnership stock belongs to the partnership, and one partner has no interest in it but his share after all the partnership debts are paid, and what he also may owe the partnership.

All just partnership debts must first be paid before one partner can appropriate any to his private debt or before it can be taken on execution. (12 Peters R. 221 ; 7 Pick. R. 542, 547 ; 6 Mass. R. 242 ; 11 Id. 271, 469 ; 17 Id. 197 ; 8 Pet. R. 271 ; 8 B. Mon. 484.)

The charge asked by plaintiff and refused by the Court was not error, as the charge was not applicable to the facts in evi-

dence, Bailey being in possession as a clerk. (2 Tex. R. 279 ; 1 Tex. R. 415.)

LIPSCOMB. J.   The appellants were plaintiffs in an execution against Bailey & McCown.  The execution was levied upon a stock of goods in the store of Bailey & McKee.  The latter, Jethro McKee, interposed a claim to the goods, so levied on, and gave bond under the statute, and there was a trial of the right of property on an issue made up between the plaintiffs in execution and the claimant; which was found by the jury in favor of the claimant.  The plaintiffs appealed.  The first error assigned, is the overruling the objection to the competency as a witness, of Bailey, the defendant in the execution.  That Bailey, the defendant in the execution, was a competent witness, is not now an open question; it was expressly decided in McQuinnay v. Hitchcock (8 Tex. R. 34.)  The strongest objections urged in the written argument of the appellants' counsel, go to the credibility and not to the competency of the witness ; and what degree of credit he was entitled to under the circumstances rested entirely with the jury.

The claimant offered in evidence a transcript, or balance sheet, taken from the books of the firm of Bailey & McKee, proven by Bailey and by Ewing a clerk in the firm.  The plaintiff objected to the evidence ; and whilst the witness Bailey was testifying, notified the claimant to produce the books. The plaintiffs' objection was overruled, and the evidence was received.   To understand the correctness of the ruling of the Court, and the pertinency of the evidence, it must be borne in mind that McKee, who was claimant of the goods levied on, claimed as purchaser from Bailey, the defendant in the execution, and was at the time of the purchase a partner in merchandize with Bailey ; and the alleged object of the purchase was, to secure McKee from loss in having to pay all of the copartnership debts ; and to show that this loss would be the result, if the partnership goods were taken to satisfy the individual debts of Bailey.  It is different, it is believed, from

offering proof of the account of an individual debtor, introduced
to establish the amount of his indebtedness. It is only expected
by this means of the balance sheet, to approximate as nearly as
circumstances will permit to the true condition of the firm. If
the means of the firm were ample to pay off all the copartner-
ship debts, besides the individual debt of one of its members,
the necessity of protection to the other partner would have had
no foundation. The firm was alleged to have been dissolved
at the time of the sale to McKee, and he assumed the payment
of the partnership debts. It is believed to be the customary
mode in use with merchants, of exhibiting the condition of their
mercantile business. It is, however, not supposed that it pre-
sents a perfect and exact condition of the business. It is only
an approximation to it. And it is impossible to know exactly
what debts due the firm are good ; some, supposed to be per-
fectly safe, may turn out entirely unavailable. Under such cir-
cumstances, the evidence, I believe, was admissible to the jury;
how far reliable was for their determination. On application
to the Court the plaintiff could, on a sufficient showing, have
procured an order of the Court for the production of the books
in Court ; no such application was made, and the notice given
to the opposite party whilst the evidence was being rendered
to the jury, cannot be regarded as of any consequence.

The next error assigned is the refusal of the Court to give
the fourth charge to the jury, asked by the plaintiffs ; the
charge asked and refused is as follows, i. e., "That fraud-
"ulent intent may be presumed, from the fact of the vendor
"remaining in possession, and that the change of possession,
"necessary to rebut the inference of an intention to defraud
"creditors, must be substantial, *bona fide* and exclusive." The
charge manifestly if given would have been the resuscitation
of the old doctrine of Edwards v. Harben, (2 Term R. 287,)
then for the first time promulgated by Mr. Justice Buller, and
which was not permitted to go unquestioned, at the time, and
has been since repudiated in England, and by most of the State
Courts of the American Union, that possession remaining with

the vendor is fraud *per se*. We have reviewed this case of Edwards v. Harben in the case of Bryant v. Kelton & Uzzel, (1 Tex. R. 417,) and we ruled in conformity with Twyne's case that possession remaining with the vendor was a presumption or badge of fraud, that it might be explained, and unhesitatingly repudiated the doctrine of fraud *per se*, and never expected that it would have been raised again in this Court.

The next error assigned calls in question the correctness of the charge of the Court in relation to the Sheriff's levy. The plaintiffs endeavored to establish a levy on the goods prior to the purchase made by the claimant, and the Court charged the jury, "that to constitute a valid levy, the Sheriff must have "taken possession of the goods in some way; a mere declara-"tion by the Sheriff that he makes a levy is not sufficient, and "he ought to take control of the entire goods of the firm when "he levies." We regard this charge as fully sustained by the decisions of this Court in the two cases of Bryan v. Bridge, (6 Tex. R. 141,) and Portis v. Parker, (8 Tex. R. 25.) It may be proper here to notice that the charge of the Court, now complained of, was contained in the general charge to the jury, and no exception or objection taken to it at the time; and if there had been anything in the objection, it might well be answered that it was not made in the Court below, and ought not to be heard here. I am aware that it has been supposed, that as the Judge is required to give his charge in writing, and as it is usual to file it with the papers of the case, any error apparent upon the record may be assigned, treating the opinion as a part of the record. Still, if all that be true, it would seem that the exception ought to be raised at the time the charge is given, because it would give the Judge an opportunity to modify or correct his charge if inadvertently he had fallen into an error. In this case, on this question, the charge of the Judge went further than the evidence would have required him to have gone; it was in reference to a pretended levy, that could not for a moment be regarded as such on personal property.

The doctrine is too well settled to be now questioned, that partnership debts claim a priority of payment out of the part-

nership effects, before the individual debt of one of the members of the firm, and McKee, the solvent partner had a right to interfere and prevent the appropriation of the partnership effects to the payment of an individual debt of one of the members of the firm. The rule contended for by the appellants' counsel, that creditors of the firm, alone, have a right to complain, is subject to the qualification, that the solvent partner has also a right to interpose, for his own protection, because he is liable for the whole copartnership debt.

There have been several points raised in the written argument of the appellants' counsel, and pressed with great ability, but not regarded as essential to the decision of this case, and we have therefore omitted, noticing them farther than to be satisfied, that in none of them is there any ground for reversing the judgment, and it is therefore affirmed.

WHEELER, J. gave no opinion in this case.

Judgment affirmed.