A. C. ROBINSON v. WILLIAM DAVENPORT, AND A. D. TINSLEY, INTERVENOR.

1. In a suit for specific performance of a parol contract for the conveyance of land, a petition alleging payment of the purchase money, possession of the land by the plaintiff, and valuable improvements made thereon; and the further allegation that the defendant had refused to make title to the land in accordance with his contract; *held*, sufficient on general demurrer.

2. The effect of a general demurrer is to put in question the sufficiency of the facts alleged, not the manner of stating such facts.

3. When a charge of the court is complained of as being too general, but which is correct as far as it goes, the attention of the court below should be called to the point, so that the omission could be corrected, if proper.

4. The appellate court will not set aside a verdict where there is evidence to support it, and not sufficient preponderance against it to authorize this court to say the verdict is wrong, or against the law and evidence.

5. In an action for specific performance of a parol contract for the sale of land, where the facts warrant a decree for plaintiff, the court should decree title to plaintiff with warranty and without any act to be done by the defendant.

6. A recital by a party in a mortgage by him executed in 1865, and recorded, disclaiming homestead rights in a certain town lot, *held* not to estop such party in 1869, when residing thereon, from claiming homestead rights therein against a party buying at sheriff's sale who testified on the trial that he bought relying upon the representations in the said mortgage, the record of which he had read.

7. See facts held not to constitute an estoppel.

APPEAL from Rusk. Tried below before the Hon. J. B. Williamson.

The facts appear in the opinion.

*James H. Jones*, for appellant.—Verbal contracts for the sale of land must, in their terms, be certain and unambiguous. (Bracken v. Hambrick, 25 Texas, 408.) It is not averred that appellant undertook or contracted to make title to the lot, at any time or at all, in appellee's petition, but it is said by appellee that this defect in the petition is cured by appellant's answer. The language of appellant in his second amended answer, to which appellee refers, is, "And it was then and there expressly agreed and understood between said Davenport and defendant that the said defendant was not to make, or the said Davenport to demand, a title to said lot of land sued for till each and all of said notes was collected," etc., and this averment is part of the history of a contract essentially different from the one set out in appellee's petition.

Contracts, and especially verbal contracts, for the sale of land cannot be so easily divided and garbled to suit the convenience of one party. It is nowhere averred in appellant's answers that he agreed to make title upon the payments to him of one thousand dollars in cash notes on good and solvent men. The authorities referred to by appellee in his brief do not apply, because these questions were not decided in them. (Blount v. Ralston, 20 Texas, 133; Neatherly v. Ripley, 21 Texas, 434; Hill v. George, 5 Texas, 89.) This last authority would be good law in a proper case, but defendant did not expressly aver or confess the material fact omitted in appellee's petition. Courts will not make for parties a new contract to which they have not given their assent. (Roberts v. Lovejoy, 25 Texas Sup., 441.) Verbal contracts for the sale of land should be wanting in nothing; they should be complete and certain, and the rights and duties of both parties should be clearly expressed and agreed to, or courts of equity will not enforce them. (Roberts v. Love-

joy, 25 Texas Sup., 441; Bracken v. Hambrick, 25 Texas, 408.) If these authorities are good, how can a court require a party to warrant title to land when it is not alleged or proved that he undertook or agreed to warrant the title?

*N. S. Bagley*, for intervenor, Tinsley.—The acts and representations of any party made to deceive, and which do deceive others, to their injury, will be binding upon them, and they will be estopped, they and all parties privies thereto, by deed or in blood. (1 Greenleaf on Evidence, page 83, Secs. 22, 33.)

The above doctrine is so universal that it is held to apply with all its force against even a married woman and infants. (9 Texas, 297; also 9 Texas, 285.)

It will be perceived from the above authorities, though few in number, that the law will not permit a party to be defrauded by the acts of other parties, and injured by being induced to purchase property, and then allow them to take the advantage of their own wrongful act and claim the property, although it may be the homestead.

*Casey & Blanton*, for appellees, cited 20 Texas, 133, Blount v. Ralston; 21 Texas, 433, Neatherly v. Ripley; 5 Texas, 89, Hill v. George; 34 Texas, 305, Wright v. Donnell; 22 Texas, 107, Boetge v. Landa; 9 Texas, 24, McGehee v. Shafer.

*M. D. Ector* and *Long & Long*, for appellees.—1. It has been decided by this court in a number of cases that when a vendee in a parol agreement goes into possession, makes valuable improvements, and pays the purchase money, he is entitled in equity to a decree for specific performance, and not for value of improvements, unless the vendor is unable to make title. (Reynolds v. Johnston, 13 Texas, 214; Dugan's Heirs v. Colville's Heirs, 8 Texas, 128; Neatherly v. Ripley, 21 Texas, 434.)

2. If Robinson contracted to sell the said lot for cash notes with Davenport's endorsement thereon, and Davenport paid him said notes and endorsed them; his children are entitled to the property.

Again: If Robinson contracted to sell the property to Davenport for cash notes, with Davenport's endorsement on same, he has no lien on said lot for the payment of said notes, or any part thereof.

Taking the responsibility of a third person is evidence that the seller did not repose upon the lien, but upon independent security, and it discharges the lien. (Parker County v. Sewell, 24 Texas, 238; Brown v. Gilman, 4 Wheat., 201.)

The lien is waived where a note or bond is taken of vendee for purchase money, in which a third person joins as security. (Fish v. Howland, 1 Paige, 20; Johnson v. Suggs, 13 S. & M., 346; Francis v. Haydring's Executors, Hardm., 48, citing 2 Wash., 144; McClure v. Harris, 12 B. Monr., 265; Marshall v. Christmas, 3 Humph., 617; Vail v. Foster, 4 Coms., 312; Autrey v. Whitmore, 31 Texas, 624.) It is a well settled principle of equity that he who having a vendor's lien takes any other security than that which equity gives him on the land sold, is held thereby to waive the vendor's lien. (3 Long on Vendors, 123; Boos v. Ewing, 17 Ohio, 500.)

Any act of the vendor which shows any intention to release the land will divest the lien. The English courts of equity lay down the true rule: Did the vendor intend to trust to the estate as his security, or did he intend to abandon that and rely on something else? If he relied on his estate, he retains his lien; if he did not, but took security on other property, or from some other person, he has lost it. (16 Ves., 348; Wasson v. Davis, 34 Texas, 159.) The vendor may waive his lien by taking personal security for the purchase money, or by taking a chattel mortgage, an assignment of collateral, or a mort-

gage on other real estate, as security therefor. (35 Texas, 689.)

3. The ground upon which the estoppel proceeds is fraud, actual or constructive, on the part of the person sought to be estopped. What will amount to the suggestion of a falsehood or the suppression of the truth may be difficult to determine in all cases; but some turpitude, some inexcusable wrong, that constituted the direct motive, or induced the outlay or purchase, is necessary to give silence or acquiescence the force of estoppel *in pais;* ignorance of the true state of the title on the part of the purchaser must concur with willfull misrepresentation or concealment on the part of the party estopped. (1 Gill., 430; Burleson v. Burleson, 28 Texas, 414; Bogges v. Merced, 14 Cal., 637; Page v. Arnim, 29 Texas, 72.)

As the effect of an estoppel may be to shut out the real truth by its artificial representative, estoppels, whether at law or in equity, are not to be favored nor extended by construction. (Jones v. Loper, 1 Dev. & Bat., N. C., 464.)

A recital does not operate as an estoppel in an action by another party, not founded on the deed, and wholly collateral to it. (Carpenter v. Butler, 8 Mees. & W., 209.)

An estoppel must be reciprocal, and a stranger can neither take advantage of nor be bound by the estoppel. (Averill v. Wilson, 4 Bart., 180.)

An estoppel by deed extends only to parties and privies thereto, and not to strangers. (Cottle v. Sydnor, 10 Miss., 763; Braintree v. Hingham, 17 Mass., 432; Worcester v. Green, 2 Pick., 425; Griggs v. Smith, 7 Hals., 22.)

An estoppel can only be asserted or pleaded by one who was affected by the act which constitutes the estoppel. (Miles v. Miles, 8 Watts & Serg., 135.)

One who is not bound by, cannot take advantage of an estoppel. It must be reciprocal and certain to every in-

tent. (Borling v. Mayer, 3 Rand., Va., 563; Lansing v. Montgomery, 2 Johns., 382.)

Before a party is held to be thus (*i. e.*, by estoppel of deed) concluded, it must appear, (1) that he has made an omission which is clearly inconsistent with the evidence which he proposes to give; (2) that the other party has acted upon the admission; and (3) that the latter will be injured by allowing the truth of the admission to be sustained. (Dezell v. Odell, 3 Hill, 215.)

REEVES, ASSOCIATE JUSTICE.—This was a suit to enforce specific performance of a parol contract for the sale and purchase of a lot of ground in the town of Henderson, Rusk county. The suit was brought by Davenport, and alleges a purchase from Robinson in 1860, describing the lot by its number and block. The petition states the agreement, alleging that Davenport paid Robinson one thousand dollars in cash notes on good and solvent men as the consideration for the sale of the lot, and that Robinson received and accepted the notes as full and complete payment of the purchase money; that Davenport went into possession immediately after the purchase, and made valuable improvements, stating their character and value, and that he and his family have continued to occupy the premises as their homestead. He charges that Robinson refused to execute to him any written evidence of title, in violation of his contract, though the purchase money for the lot had been paid, and prays that Robinson be decreed to make him a deed with general warranty of title. The suit was brought to the Spring term, 1869, of the court. At that term the defendant answered by a general exception to the sufficiency of the petition and general denial.

Afterwards, at the same term, he obtained leave to amend his answer, and set up as special matter of defense that he had agreed to sell the lot; the agreement was not

in writing, and by its terms no interest was to vest in the plaintiff until the entire amount of the purchase money was paid, which he averred was fifteen hundred dollars in specie, and should have been paid in 1860, but which the defendant had refused to pay, and had taken wrongful possession of the lot; concluding with a prayer for judgment for the lot, and for rents and profits, or the amount of the purchase money and interest, and a decree for the sale of the lot to pay the same.

At the April term, 1870, A. D. Tinsley obtained leave to intervene, and filed his petition setting up title in himself to the lot in controversy, claiming under a purchase at sheriff's sale in August, 1869, during the pendency of the suit, under a judgment and execution against the plaintiff, William Davenport, and in favor of Nathan C. Falger. He suggests the death of William Davenport since his purchase, and makes his heirs and Joseph W. Davenport parties, and offers to pay any balance that may be found to be due from William Davenport on his purchase of the lot from Robinson, and asks to be subrogated to his rights and the rights of his heirs, and that Robinson be decreed to make him a title.

After several continuances the defendant, Robinson, amends his answer and admits the sale of the lot to William Davenport, and says that Davenport agreed to pay him for the lot $1500 in promissory notes, bearing ten per cent. interest, with Davenport's endorsement, and avers that title was not to be made until the notes were paid; admits that part of the notes were paid, and specifies which of them were not collected, giving the names and amounts, and asks judgment against the plaintiffs for the amount with interest, and a decree to sell the lot to pay his demands.

Tinsley also amended his pleadings, and alleged that William Davenport was an unmarried man when the lot

was sold under.Falger's execution, and set up, as a further defense, that Davenport had admitted that the lot was not his homestead, and that it was worth $6000, and therefore subject to forced sale.

Davenport's heirs and administrator having made themselves parties, the suit was prosecuted in their names. At the.September term, 1873, there was a trial. The defendant's exception to the petition was overruled, and judgment was rendered for plaintiffs on verdict of the jury finding for them. The decree divested title of the defendant and vested the same in plaintiffs, with covenants of warrant of title. Judgment was also rendered against Tinsley, the intervenor, for costs.

The defendant and the intervenor filed separate motions for a new trial, which being overruled, they prosecute separate appeals, each assigning errors.

The.errors complained of will be noticed in the order in which they are presented, so far as it may be deemed necessary to consider them. The defendant's assignment will be disposed of first.

The first error is, that the court erred in overruling defendant's demurrer to plaintiffs' petition. In support of the general demurrer it is insisted that the petition is uncertain, and therefore defective, in failing to aver that Robinson undertook or contracted to make title to the lot at any time.

Though the petition does not aver that Robinson, in express terms, agrees to make title, yet it is alleged that he refused to make title in violation of his contract; and taking the allegations of the petition to be true, as they are to be regarded on demurrer, there was no error in overruling the demurrer, if the plaintiff was entitled to relief on proof of the facts stated in his petition. Payment of the . purchase money and possession and improvements would warrant the presumption that the defendant would make a title. The question upon general demurrer is, whether.

the pleading demurred to discloses a cause of action ; if it does, its office would not reach an inquiry as to the mere form of stating the cause of action or ground of defense. The pleader must state the facts upon which he relies for his cause of action or ground of defense, and when that is done, though in a defective manner, objections must be made by special exceptions, if the party would take advantage of it, and not to the evidence which may be offered on the trial in support of the facts. (Frosh v. Swett, Administrator, 2 Texas, 485; Warner v. Bailey, 7 Texas, 517; Wells' Administrator v. Fairbanks, 5 Texas, 582.)

The doctrine that courts of equity will decree specific performance of parol contracts for the sale of lands under certain circumstances against the inhibitions of the statute of frauds requiring the agreement or some memorandum to be in writing has been too long established to be seriously questioned. (The inquiry, therefore, is not whether relief will be granted in any case, but whether the case comes within certain defined rules which have been held to establish exceptions to the statute.) The decisions proceed upon the idea that the equities which will be enforced are in aid of the statute which was to prevent fraud, and independent of it.

When the purchase money is paid and possession is taken with consent of the vendor, and improvements are made without his objection, it comes within the exception and the rule that the purchaser is entitled to relief, and a title will be decreed. (Garner v. Stubblefield, 5 Texas, 552 ; Dugan's Heirs v. Colville's Heirs, 8 Texas, 126 ; Neatherly v. Ripley, 21 Texas, 434; Taylor v. Rowland, 26 Texas, 293.

Appellant, Robinson, does not resist the enforcement of the agreement because it was verbal, for he is seeking to recover the purchase money, as shown by his second amended answer, and that amounts to an affirmance of

the agreement. (Roeder v. Robson, 20 Texas, 754.) But his objection is, that the charge of the court to the jury is too general and indefinite, and that it does not present the issue of fact made by the pleadings with sufficient clearness.

The issue tendered by plaintiff in his petition is that he paid Robinson one thousand dollars in cash notes, on good and solvent men, as the consideration for the sale of the lot, which Robinson received and accepted as full payment of the purchase money. This is denied by the defendant. He says that Davenport agreed to pay him fifteen hundred dollars in promissory notes, bearing ten per cent. interest, with Davenport's endorsement, and that a part of the notes are unpaid, and which is the balance of the consideration for the sale of the lot.

It will thus be seen that the issue was whether the purchase money had been paid, and if not, what amount of it was unpaid; and it was only necessary to inquire as to the latter, if the jury under the evidence should have returned a verdict for the defendant.

The court charged the jury in substance to find for plaintiff or defendant, as the one or the other had proved the agreement as he had described it in his pleadings. If the charge was thought to be too general, but was correct so far as it went, but that it did not go far enough, the attention of the court should have been called to the point, that the omission might have been corrected, if proper. (Robinson v. Varnell, 16 Texas, 387; Farquhar v. Dallas, 20 Texas, 200; Converse v. McKee, 14 Texas, 30.)

Another ground of objection is that the verdict of the jury was contrary to the law and the evidence.

This case adds another to the numerous cases decided by this court in which it is held that the verdict of a jury will not be set aside where the evidence is conflicting.

The allegation of the defendant that the lot of ground

had been paid for by William Davenport, is clearly and distinctly proved by Joseph W. Davenport. This witness proves that William Davenport took possession of the lot in 1860, and made improvements as alleged in the petition, and occupied it as his homestead until his death in September or October, 1869, and since that time his daughters have occupied it as a homestead. The terms of the agreement, the amount of the purchase money and its payment, excepting about nine hundred dollars, are denied by the defendant, who was examined as a witness on the trial. He denied that the consideration for the lot was one thousand dollars in notes, but stated that Davenport paid him fifteen hundred dollars in notes, with his endorsement, and defendant was not to make title before the notes were paid.

It was proved for defendant that Davenport, in 1867 or 1868, admitted that he had not paid for the lot. There was other testimony offered by both parties tending to establish different conclusions, not necessary to be given in detail. It it sufficient to say that there was evidence to support the verdict and not such preponderance of evidence against it as would authorize this court to say that it was wrong and contrary to the law and evidence. It was a case to be decided by the jury on conflicting evidence. (Russell v. Mason, 8 Texas, 226; Gamage v. Trawick, 19 Texas, 64; Long v. Steiger, 8 Texas, 462; George v. Lemon, 19 Texas, 152; Anderson v. Anderson, 23 Texas, 641; Baldridge v. Gordon, 24 Texas, 288; Howard v. Ray, 25 Texas, 91; Adams v. George, 25 Texas Sup., 374.)

It is further objected that one of the jurors who tried the case was a nephew of the plaintiff, and which was unknown to the defendant until after the argument of the case had begun.

The fact might have been known upon inquiry at the time the jury were impanneled, and the objection might

have been interposed as a ground of challenge. It does not appear that injustice was done the defendant, or that the jury rendered such a verdict as should not have been rendered under the evidence. Nó notice was taken of it when the fact was made known to the defendant until after verdict, and unexplained by other evidence the objection, in the form in which it is presented, is not sufficient to set aside the verdict.

The last assignment is, that the court erred in the judgment requiring defendant to make to plaintiffs a deed of conveyance with covenants of warranty. It would have been more in accordance with the statute if the judgment by its terms had passed the title with warranty, without any act to be done by defendant, as provided by Article 1481 of the Digest; and the judgment in this respect will be reversed and reformed at the cost of the appellant.

The errors assigned by the intervenor, Tinsley, are—

1. That the court erred in the charge to the jury.

2. In not giving the charge asked by intervenor.

3. The jury found contrary to the law and evidence.

4. For error in ruling out the testimony of A. D. Tinsley.

5. The court erred in giving judgment for Joseph W. Davenport for costs, when he had not answered.

The testimony in support of the intervenor's claim consisted of the judgment and execution in favor of Falger against William Davenport, and intervenor's purchase of the lot in August, 1869, during the pendency of the suit, and sheriff's deed for the property in consideration of the payment of the purchase money of $17. He also read in evidence a mortgage deed from William Davenport to Brown and McMurray for the lot in controversy, in 1865, in which Davenport says that this lot of ground is not his homestead, and that he had never claimed it as his homestead, and that he claimed another place not in Henderson as his residence and homestead. This mortgage was recorded in the county clerk's office in Rusk county.

Tinsley, the intervenor, was examined on the trial as a witness, and stated that he had read this record of the mortgage on the day and before his purchase of the lot under Falger's judgment and execution against William Davenport, and that he was induced by the mortgage to make the purchase. On objections by plaintiff the court ruled out his declaration as to his inducement to purchase.

The plaintiff proved that the place on which William Davenport resided before he resided upon the lot in suit had been sold in 1868 under a judgment and execution in favor of Wiley Harris, to pay the purchase money, and was the same land sold by Harris to Davenport. They also proved that William Davenport and his family resided upon the lot as their homestead before and at the date of Tinsley's purchase in 1869.

The court charged the jury that if the lot at the time of its purchase by Tinsley was claimed and used by Davenport as the homestead, to find for plaintiffs as against the intervenor, and in this we think there was no error. The statement of Tinsley that he was induced to purchase because of the recital in the mortgage to Brown and McMurray in 1865, that the lot was not then the homestead, if allowed to go to the jury as evidence, would not prevent Davenport from showing that the property was his homestead at the date of Tinsley's purchase in 1869.

The evidence shows that Davenport claimed it as the homestead of himself and family, and the claim was alleged in his petition. The plaintiffs were in possession when Tinsley purchased.

The Harris place, on which the family resided before possession was taken of the lot, had been sold to pay the purchase money, under Harris' judgment and execution, before Tinsley purchased the lot, and he had constructive, if not actual, notice of the homestead claim when he

purchased, and might have known, upon inquiry, that the lot was the homestead. There was no error in refusing the charge asked by Tinsley.

The evidence supports the verdict, and there was no error in overruling the motion for a new trial.

The assignment that the court erred in giving judgment for Joseph W. Davenport for costs, when he had not answered, is not supported by the record. He answered, with the heirs of William Davenport, on suggestion of his death, in December, 1871.

The pleadings and evidence do not present the case in such form as to require an opinion as to how far the excess of a homestead may be reached by execution.

The judgment is affirmed as to A. D. Tinsley, and reversed and reformed as to appellant, Robinson, as indicated in this opinion.

REVERSED AND REFORMED.