**HALSELL et al. v. SCURR.** (No. 11789.)*

Court of Civil Appeals of Texas. Fort Worth.
May 7, 1927.

Rehearing Denied June 4, 1927.

**1. Frauds, statute of ☞106(2)—Agent's letter agreeing to draw up lease for 10 years held sufficient memorandum to bring case within exception to statute (Rev. St. 1925, art. 3995).**

Letter from landlord's agent to tenant agreeing as soon as he got time to draw up lease on building for 10 years at named rate *held* sufficient memorandum to bring case within exception to Statute of Frauds, § 4 (Rev. St. 1925, art. 3995), providing that contract for lease of real estate for a longer term than one year shall be in writing.

**2. Frauds, statute of ☞129(2)—Possession with payment of rent and improvements made by tenant held sufficient to take case out of statute of frauds (Rev. St. 1925, art. 3995).**

Changes and improvements in premises made by tenant after entry thereon under verbal lease for 10 years *held* sufficient to bring case within exception of Statute of Frauds, § 4 (Rev. St. 1925, art. 3995), requiring lease for longer period than one year to be in writing.

**3. Frauds, statute of ☞119(2)—Statute of frauds will not be enforced, when to do so will effect a fraud.**

The statute of frauds was enacted to prevent fraud, and it will not be enforced when to do so will effect a fraud.

**4. Landlord and tenant ☞200(2)—Agreement to reduce rent during term of oral lease for 10 years held supported by consideration.**

Oral agreement between landlord and tenant that, in case boom times then existing in city did not justify it, monthly rental of $450 should be reduced to $350 thereafter *held* part of original rental contract and supported by sufficient consideration.

**5. Trial ☞350(3)—Refusal to submit issue whether tenant as ordinarily prudent person would not have repaired roof to protect merchandise from leaks held not error, in view of landlord's promise to repair.**

In tenant's action against landlord for damage to his stock of merchandise because of landlord's failure to repair roof, where tenant relied on promise of landlord's agent to repair the roof, refusal to submit issue of whether an ordinarily prudent person would have repaired the roof notwithstanding promises of landlord to repair it so as to afford his merchandise protection from leaks therefrom *held* not error.

**6. Landlord and tenant ☞150(1)—Lessor generally need not make ordinary repairs on leased premises or pay for repairs made by tenant.**

In absence of statute or express stipulation, lessor generally is not bound to make ordinary repairs on leased property or to pay for repairs made by tenant, but may bind himself to make repairs specified.

**7. Landlord and tenant ☞152(3)—Where landlord binds himself to make repairs, tenant is thereby relieved from legal duty to do so.**

Where contract of landlord binding him to make specified repairs is shown, tenant is thereby relieved from legal duty to make repairs.

**8. Landlord and tenant ☞150(1)—Tenant's duty to exercise reasonable care to protect property from damage does not require him to undertake extraordinary and costly repairs.**

Notwithstanding tenant is bound to exercise reasonable care to protect his property from damage, such duty does not require him to undertake extraordinary and costly construction such as placing on a building a new roof, where landlord has agreed to repair roof, and, if necessary, to construct a new one.

**9. Landlord and tenant ☞152(11)—In absence of express stipulation, tenant cannot make material or permanent alterations in premises.**

In absence of express stipulation, a tenant has no right to make material or permanent alterations in demised premises.

**10. Landlord and tenant ☞150(5)—In absence of statute or agreement, landlord is not liable for repairs made by tenant to demised premises.**

In absence of statute or express agreement, landlord is not liable to tenant for repairs made by the latter to demised premises, and is under no obligation to reimburse him therefor.

**11. Landlord and tenant ☞169(7)—Testimony relating to damage to tenant's stock of merchandise because of leaky roof held sufficient to sustain verdict for damages.**

In tenant's action against landlord for damage to stock of hardware from a leaky roof causing all steel goods to rust, tenant's testimony *held* sufficient to sustain verdict for damages, notwithstanding that each article in stock of goods of value of $45,000 was not examined and precise damage thereto given.

Appeal from District Court, Tarrant County; R. E. L. Roy, Judge.

Action by Furd Halsell against Thomas C. Scurr, in which defendant interpleaded Sicily A. Waggoner. From a judgment for plaintiff against defendant, and from a judgment for defendant against Sicily A. Waggoner, plaintiff and said Waggoner appeal. Affirmed.

A. J. Clendenen, of Fort Worth, for appellants.

Ross, Ross & Alexander, of Fort Worth, for appellee.

CONNER, C. J. The appellant Furd Halsell instituted this suit in the usual form of trespass to try title against the appellee, Thomas C. Scurr, to recover lots 1 and 2 in block 38 of the original town plat of the city of Fort Worth, alleging title in the plaintiff on the 1st day of January, 1925. Defendant's answer is quite voluminous,

and in our introductory statement we will only set forth its substance. It consists of a general demurrer and allegations to the effect that on or about the 1st day of October, 1919, defendant and Sicily A. Waggoner, plaintiff's predecessor in title, acting by a duly authorized agent, entered into a verbal contract whereby Sicily A. Waggoner leased the property in controversy to defendant, to be used by him for his hardware and salvage business, for 10 years commencing on the 1st day of July, 1920, and ending on the 30th day of June, 1930; that by terms of said contract Sicily A. Waggoner covenanted and agreed that she would remodel the store building then and now located on said property by making specified alterations, repair the roof, then in bad condition and leaking; and in case she could not repair the roof so as to stop the leaks that she would put a new roof on the building and thereafter during the continuance of the lease keep said roof in perfect repair.

The defendant further alleged that in consideration of the agreement and of the 10 years' lease, he promised to move his hardware and salvage business to the premises in controversy and to pay therefor as rental the sum of $450 per month for the first 12 months, and the same amount per month thereafter in case the boom times in Fort Worth then existing kept up and his business would justify it, and if not, then the sum of $350 per month thereafter; that relying upon said lease for 10 years, he moved his stock of hardware, of an approximate value of $45,000, from the business house he was then occupying to the leased property in controversy at an expense to him of about $5,000; that in so doing his goods were commingled and misplaced and many articles entirely lost; that by reason of this move he lost many of his customers and profits of $5,000; that after taking possession of said property and relying on the validity of the lease, he made and erected shelving in and around the walls of the building, installed showcases and tables, repaired windows and floors, and made other sundry valuable and permanent improvements, all at an expense to him of approximately $5,000, all of which was necessary for the profitable management of the hardware and salvage business, and all of which disconnected from the building would be practically worthless, but, as situated, of substantial value to him and his business.

Defendant further alleged that on or about the 18th day of October, 1919, the said Sicily A. Waggoner, acting by and through her duly authorized agent, Walter C. Dugger, made, executed, and delivered to defendant a memorandum in writing of said lease contract, in which he agreed for and on behalf of Sicily A. Waggoner that just as soon as he got time he would draw up a lease on the building in question for a term of 10 years from July 1, 1920, at the rate of $450 per month; that within 12 months after the beginning of said lease it was mutually agreed by and between defendant and said Sicily A. Waggoner, acting by her said agent, that the conditions in reference to reducing the monthly rentals to $350 per month had occurred, and that thereupon said Walter C. Dugger reformed said memorandum in his own handwriting, or authorized the defendant to alter it, under and by virtue of which the rental was to be $350 per month after the first 12 months; that defendant had duly paid all rentals due Sicily A. Waggoner at the rate of $450 per month for the first year of his occupancy, and at the rate of $350 per month thereafter until the conveyance of the property to the plaintiff Furd Halsell, and thereafter payment and tender of payment to the plaintiff Halsell to the time of the filing of the suit.

The defendant also interpleaded Sicily A. Waggoner, against whom he repeated all his allegations concerning the 10 years' verbal lease, the written memorandum, the modification of the lease at the end of the first year, and charged a breach of contract by Sicily A. Waggoner to repair or reroof the building, which, it was averred, resulted in damages to his stock of hardware, and prayed for a judgment establishing a 10 years' lease on the building in controversy and for judgment for damages to his stock of hardware by reason of the breach of contract to repair.

The plaintiff filed a supplemental petition containing a general demurrer and special exceptions, and denial of the allegations of the answer, a plea of contributory negligence on the part of the defendant, by reason of a failure to himself repair or put on a new roof so as to preserve his stock, and alleged that the memorandum specified in the defendant's answer was only a promise to make a lease and not evidence of a concluded contract, and pleaded as against the contract section 4 of the Statute of Frauds (Rev. St. 1925, art. 3995).

Sicily A. Waggoner appeared, adopted the pleadings of plaintiff Halsell, and pleaded the statute of limitation of 2 years against the defendant's cross-action.

The general demurrers and all of the special exceptions of the plaintiff and Sicily A. Waggoner were overruled, to which they excepted, and the case was submitted to the jury on special issues, and upon the answers of the jury judgment was rendered for the plaintiff for rents past due at $350 per month, aggregating $6,051.02, with foreclosure of the landlord's lien, and on defendant's cross-action judgment was rendered in his favor for $5,000 damages against Sicily A. Waggoner, and also fixing and establishing defendant's lease on the property in question for 10 years. From the judgment so rendered the plaintiff Furd Halsell and Sicily A. Waggoner have duly prosecuted this appeal.

[1] By errors assigned to the action of the court in overruling appellant's demurrers and motion for new trial, and in other forms, the principal question presented for our determination is whether appellant's pleadings and evidence in support of the judgment bring this case within an exception to our statute of frauds. The statute, which, as stated, was duly pleaded by appellants, so far as applicable, reads as follows:

"No action shall be brought in any court in any of the following cases, unless the promise or agreement upon which such action shall be brought, or some memorandum thereof, shall be in writing and signed by the party to be charged therewith or by some person by him thereunto lawfully authorized:

\* \* \* \* \* \*

"Upon any contract for the sale of real estate or the lease thereof for a longer term than one year." Article 3995, Rev. Statutes of 1925.

It may be fairly said to be undisputed that Walter C. Dugger was the duly authorized agent and representative of Sicily A. Waggoner during the month of October, 1919, and that as such he, in behalf of Sicily A. Waggoner, agreed with appellee to rent or lease to him the building and premises in controversy, then owned by Sicily A. Waggoner, for a period of 10 years, commencing on the 1st day of July, 1920, and ending on the 30th day of June, 1930, appellee to pay therefor a rental of $450 per month for the first 12 months, which rental, however, by the agreement was to be reduced to $350 a month if, as alleged by appellee, conditions during the year warranted the reduction; that during the year upon conference and agreement the rent was so reduced. It is further undisputed that on the 18th day of October, 1919, W. C. Dugger wrote and delivered to appellee, Scurr, the following memorandum in writing, to wit:

"Mr. T. C. Scurr, Houston St., Fort Worth, Texas—Dear Sir: I am writing this letter as an agreement to the effect that just as soon as I get the time will draw up lease on building owned by Mrs. Waggoner on northwest corner of Second and Houston streets, between us and yourself, for a term of 10 years from July 1st, 1920, at the rate of $450 per month with all clauses such as go with same and deliver same for your signature. Yours very truly, W. C. Dugger, Jr., Agent for Mrs. Dan Waggoner."

The proposed lease referred to in the letter does not appear to have been ever drawn and signed by appellee; he nevertheless proceeded to remove from his then place of business into the store building in controversy, at an expense, as estimated by him, which seems not to have been controverted, of about $5,000, and, in order to adapt the inside of the building to the necessities of his business, he made the improvements substantially as alleged in his pleadings. In behalf of appellee, it is insisted that the letter we have copied constitutes a sufficient memorandum, within the meaning of the statute, to free the oral agreements from the inhibitions of the statute of frauds, or, if not, that the allegations and evidence in behalf of appellee relating to his expenses in removing his stock of goods, together with the making of the improvements specified in his pleadings, are sufficient to do so.

In 2 Page on Contracts, § 1320, p. 2278, it is said:

"If the memorandum sets forth the requisite facts and is in writing and duly signed, its form is immaterial. A memorandum showing all the terms of the contract is sufficient, although the parties intended to execute a formally drafted contract thereafter. \* \* \* A letter, or a telegram, addressed to the adversary party, or a letter written and signed by the party to the contract to be charged therewith, addressed not to the adversary party to the contract but to another person, such as a letter by a principal to his agent, may be a sufficient memorandum."

In section 1329 of the same authority it is said:

"The statute allows the signature to be made 'by the party to be charged therewith or some other person thereunto by him lawfully authorized.' Under this wording, the contract, note, or memorandum may be signed by an authorized agent."

In section 1332 the same author says:

"If the outward form of the memorandum is in compliance with law, its sufficiency then depends on its contents. \* \* \* Accordingly, the memorandum must, in general, set forth with sufficient certainty the essentials of the agreement. This usually includes the existence of a contract, the parties, their relation to the contract, the subject-matter, the terms, and sometimes the consideration. If it contains these elements, it is sufficient."

Succeeding sections are to the effect that the memorandum must show that the parties intend thereby to enter into a contract, or that they have already entered into a contract, and must show who are the parties to the contract and their relation thereto and its subject-matter.

In the case of Morrison v. Dailey (Tex. Sup.) 6 S. W. 426, the following receipt was held to be a sufficient memorandum for the sale of land, to wit:

"Lancaster, June 28, 1887. Received from H. Morrison forty dollars on my place, known as the 'James Perry tract of land,' which tract I have sold to him for forty-five hundred dollars, part cash, and the balance to bear interest at 10 per cent. per annum until paid. \* \* \*
"Mrs. N. B. Dailey."

In the opinion, which was written by Judge Gaines of our Supreme Court, the following was said:

"Upon the question presented by the proposition in the demurrer, that the terms of the contract are not sufficiently shown in the memorandum, the decisions are in conflict. The

weight of authority seems to be in favor of the rule that all the material terms of the contract should appear in the writing [citing numerous cases]. The courts which held the affirmative of the question seem to base their conclusion upon the ground that, by the use of the word 'agreement' or the word 'contract,' the statute meant all stipulations agreed to by the parties. On the other hand, it is considered by some of the authorities that the object of the statute, so far as lands are concerned, was to abrogate parol titles, and that this was sufficiently accomplished by a memorandum of the promise to convey the land, to be signed by the vendor, without requiring the other terms of the agreement to be stated. We need not decide which is the better reason, for we regard it as now settled, in this state, that all the terms of the contract need not appear in the memorandum. In Fulton v. Robinson, 55 Tex. 401, a receipt which named the vendee, and recited that it was 'part of the purchase money of my own headright, lying on Rush creek, in the cross timbers' and which was signed by the vendor, was sufficient under the statute of frauds. The memorandum before us is quite similar to that, but is more explicit. It states the price, and that it was to be paid partly in cash and partly on a credit, and shows the rate of interest. If that memorandum was sufficient, this must be. The decision in the case cited lays down a rule of property; and, though we may consider it against the weight of authority, and the better reason, we are not at liberty to depart from it. It is not without both reason and authority to support it."

The opinion from which we have just quoted is cited with approval in the case of Simpson v. Green, 231 S. W. 375, by Section A of our Commission of Appeals, and approved in behalf of the Supreme Court by Chief Justice Phillips.

In the case of Osborne v. Moore, 112 Tex. 361, 247 S. W. 498, by Section A of Commission of Appeals, and approved by Chief Justice Cureton of our present Supreme Court, the following was said, quoting from the headnotes:

"The rule that a writing, to satisfy the statute, must show essential terms, without resort to parol proof, does not require that the writing shall contain all the stipulations agreed to by the parties, but it will be deemed sufficient, in a suit against a seller for specific performance, if it be signed by him and shows an agreement to sell or convey the particular land involved in the suit."

Other authorities cited in behalf of appellee are as follows: Dial v. Crain, 10 Tex. 444; Peters v. Phillips, 19 Tex. 70, 70 Am. Dec. 319; Fulton v. Robinson, 55 Tex. 401; Thomas v. Hammond, 47 Tex. 55; Ellett v. Britton, 10 Tex. 208; Adkins v. Watson, 12 Tex. 199.

On the trial it was agreed that Sicily A. Waggoner was the common source of title under which appellant Halsell and appellee, Scurr, claimed, and that the property sued for by appellant Halsell was the same property as that mentioned in the letter of October 18, 1919, and that appellee, Scurr, occupied the property when appellant Halsell acquired it, and was still occupying it at the time of the trial, and that the Mrs. Dan Waggoner mentioned in appellant's letter and appellant Sicily A. Waggoner were the same person.

The pertinent provisions of the statute of frauds apply alike to conveyances of land and to leases thereof for terms longer than one year, and the authorities applicable to one are undoubtedly applicable to the other, and, applying the rule as now established by our Supreme Court as a rule of property, the memorandum under consideration in our judgment is sufficient to satisfy the provisions of the statute. It names the parties thereto as appellee, Scurr, and appellant Sicily A. Waggoner; it unmistakably identifies the subject-matter of the contract; it identifies the property leased and the length of time the lease is to run and the rental to be paid, and it is to be plainly inferred from the terms used that an agreement to so lease the premises for the period specified had been made.

[2] There is yet another view of this case that we think takes it outside of the statute of frauds. As already noted, appellee's allegations and evidence plainly show that a verbal contract for a 10-year lease of the premises in controversy was made, and that on the faith of such contract appellee, with the knowledge of Sicily A. Waggoner's duly authorized agent, and at large expense, took possession of the premises and made considerable and costly changes, adjustments, and improvements in the interior of the building in order to reasonably adapt it to the profitable prosecution of his business. He thereafter paid to Sicily A. Waggoner the rentals as agreed upon from the beginning of the lease on July 1, 1920, until her conveyance (which was a deed of gift) to appellant Halsell on February 13, 1924, and thereafter paid such rentals to Halsell until the June, 1925, installment became due, which Halsell refused to receive.

In the case of Randall v. Thompson Bros., 1 White & W. Civ. Cas. Ct. App. § 1100, p. 619, it is said:

"Sec. 1101. Where a lessee of land under a parol lease for a term of more than one year takes possession of the premises and pays a part of the rent, it has been held that this was such part performance of the contract as would take the case out of the operation of the statute of frauds, and make it a contract capable of enforcement."

In the case of Adams v. Van Mourick, 206 S. W. 721, the Court of Civil Appeals at El Paso had this to say:

" 'Where, by * * * parol lease for a period longer than one year, the landlord places the tenant in possession of the premises, and receives from him one or more installments of

rent in accordance with the terms of the lease, this constitutes such part performance as will take the contract out of the statute of frauds, and the same may be enforced in accordance with its terms.' Sorrells v. Goldberg et al., 34 Tex. Civ. App. 265, 78 S. W. 711."

In the case of Sorrells v. Goldberg, 34 Tex. Civ. App. 265, 78 S. W. 711, Judge Bookhout of the Dallas Court of Appeals said:

"By the terms of the statute of frauds a parol contract for the lease of real estate for a longer time than one year is not enforceable. Sayles' Ann. Civ. St. 1897, art. 2543, subds. 4, 5. It is contended that the effect of a parol lease for a longer period than one year is to create an estate for the statutory period for which a parol lease is good. And where such contract is made between parties, and possession of the premises had and rent paid thereunder, the contract is enforceable to the extent of one year from the commencement of the term. This contention is supported by the holdings in some jurisdictions; but the decisions seem to be based upon statutes of those states giving to such parol lease the force and effect of estates at will. Washburn on Real Property, § 823; Taylor on Landlord and Tenant, § 28. We have no such statute in this state. So long as the contract remains executory, it is not enforceable. But, if there has been a substantial part performance of the contract, the rule is different. Where, by virtue of a parol lease for a period longer than one year, the landlord places the tenant in possession of the premises, and receives from him one or more installments of rent in accordance with the terms of the lease, this constitutes such part performance as will take the contract out of the statute of frauds, and the same may be enforced in accordance with its terms. Randall v. Thompson Bros., 1 White & W. Civ. Cas. Ct. App. § 1101; Anderson v. Anderson [13 Tex. Civ. App. 527] 36 S. W. 817; Earle of Aylesford Case, 2 Str. 783; Grant v. Ramsey, 7 Ohio St. 158; Jones v. Peterman, 3 Serg. & R. [Pa.] 543, 8 Am. Dec. 672."

We do not hold, as indicated by these authorities, that merely taking possession and paying rents under an oral contract, unaccompanied with improvements, or other matter of equitable estoppel, will take a case out of the statute, but we do hold that possession delivered and taken under the circumstances of this case, coupled with the payment of rent, as shown, and the making of improvements by appellee, as shown, will do so.

[3] The basis upon which the courts act in relieving a parol contract from the prohibition of the statute is an equitable one. The court in such cases proceeds upon the theory that the statute was enacted to prevent fraud and it will not be enforced when to do so will effect a fraud, i. e., bring about the very thing it was the object of the statute to prevent. The cases most frequently decided in which the principle has been applied are cases in which an effort was made to enforce an oral conveyance or gift of lands. The rule to be applied in such cases in courts

of this jurisdiction is thus forcibly and clearly stated by Chief Justice Phillips in the case of Hooks v. Bridgewater, 111 Tex. 122, 229 S. W. 1114, 15 A. L. R. 216:

"From an early time it has been the rule of this court, steadily adhered to, that to relieve a parol sale of land from the operation of the statute of frauds, three things were necessary: (1) Payment of the consideration, whether it be in money or services. (2) Possession by the vendee. And (3) The making by the vendee of valuable and permanent improvements upon the land with the consent of the vendor; or, without such improvements, the presence of such facts as would make the transaction a fraud upon the purchaser if it were not enforced."

Judge Phillips quotes with approval the following from the case of Bradley v. Owsley, 74 Tex. 69, 11 S. W. 1052:

"The rule in this state is well established that verbal contracts for the sale of land will not be enforced without proof of possession [i. e., possession delivered by the vendor with payment, etc.] and valuable improvements permanent in character or of other facts making the transaction a fraud on the purchaser if not enforced. Ann Berta Lodge v. Leverton, 42 Tex. 25; Robinson v. Davenport, 40 Tex. 342."

In Morris v. Gaines, 82 Tex. 255, 17 S. W. 538, Judge Gaines, who so uniformly expressed his conclusions in clear and convincing terms, wrote as follows in discussing a verbal promise to pay the debt of another which falls within the second clause of the statute of frauds, to wit:

"The doctrine is well established that where either party, in reliance upon the verbal promise of the other, has been induced to do or to forbear to do any act, and thereby his position has been so changed for the worse that he would be defrauded by a failure to carry out the contract, equity will enforce a performance."

In the light of these authorities, we think it must be held, as stated, that appellee's possession, improvements, and payment of rents, as alleged and proved by him, constitute such part performance of the oral contract as renders the statute of frauds inoperative. To hold otherwise, as it seems to us, would work a fraud instead of prevent one. It is insisted that the improvements made by appellee were not permanent and beneficial to the real property so as to bring appellee within the exception to the statute. It is true, appellee did not construct improvements that became fixtures to the store building, but he did, at large expense, move into it and constructed improvements made necessary by the change and which will be largely worthless in event appellee is compelled to discontinue his occupancy. While courts of equity have uniformly accepted the fact of permanent and valuable improvements, coupled with delivery of possession and payment, as sufficiently establishing equity which war-

rants a disregard of the statute, we know of no case which goes so far as to hold that other facts of like tendency and cogency may not be considered in place of improvements to the realty. On the contrary, the general rule as stated in the cases of Hooks v. Bridgewater, and Bradley v. Owsley, supra, and elsewhere is accompanied with the qualifying terms, "or, without such improvements, the presence of such facts as would make the transaction a fraud upon the purchaser if it [the oral contract] were not enforced." Just what facts will be sufficient to establish such fraud are not and cannot be stated in advance. Each case must be determined upon its own particular circumstances like any other case dependent upon an issue of fraud. These conclusions find support in the case of Ward v. Etier, 113 Tex. 83, 251 S. W. 1028. In that case, equities not arising out of proof of permanent and valuable improvements were found and held to be sufficient to bar the statute. Without further discussion, we overrule all assignments of error based on the statute of frauds.

[4] Other questions that seem material we think may be disposed of more briefly. We overrule the contention that the agreement to reduce the rent from $450 per month to $350 was void for want of consideration. This agreement was part of the original contract and supported by the same consideration, of which no complaint of insufficiency is made. Branch v. Wafford (Tex. Civ. App.) 254 S. W. 389. With the statute of frauds out of the case, the oral contract is enforceable according to its terms. Morrison v. Dailey (Tex. Sup.) 6 S. W. 426, cited with approval in Osborne v. Moore, 112 Tex. 361, 247 S. W. 498. Hence, we see no legal objection to appellee's allegation and proof relating to change in rate of rental, both parties to the contract agreeing upon the condition upon which the reduction should be made, particularly in view of the fact that payment of rents by appellee at the reduced price for many months was accepted without objection by both Mrs. Waggoner and appellant Halsell.

[5] Appellant requested and the court refused to submit the following special issue:

"Would an ordinarily prudent person situated as T. C. Scurr was, with his goods in the building in controversy, with the roof leaking as he testified it was, notwithstanding any promises of W. C. Dugger to repair or re-roof said building, have himself repaired or re-roofed the same or caused the same to be done so as to afford his goods protection from such leaks, at any time before March 14, 1923?"

Appellee testified without contradiction that at the time of entering into the rental contract he found that the roof on the building was leaking, and that the rental agent, Dugger, as part of the contract, agreed to so repair the roof as to stop the leaks, or, if unable to do so, would put a new roof on the

building; that it rained many times during the occupancy of the building, and after each rain he found and made complaint of leakages; and that upon each complaint for many times the rental agent had made efforts to repair the roof so as to prevent the leakage but had been unable to do so. Appellee was asked the question why he himself, in that event, did not put a new roof on the building in order to save damage to his stock of merchandise. He testified, in effect, that from time to time he had relied upon the promises of the rental agent to repair the roof and had not put a new roof on himself, which he thought might have been put on at an outlay of $200. In this connection, however, he testified that he was not engaged in the roofing business, and it is evident that his statement that a new roof could have been put on at a cost of $200 was a mere estimate and entitled to no consideration.

[6, 7] In the absence of a statute or an express stipulation in the contract to that effect, the lessor, generally speaking, is not bound to make ordinary repairs on leased property, or to pay for such repairs made by the tenant, but it is not to be doubted that as a part of the leasehold contract a landlord may bind himself to make repairs as specified. Such agreement being shown, it follows that the tenant is thereby relieved from any legal duty to do so.

[8, 9] It is true, notwithstanding this, that a tenant, in accordance with a general principle may be held bound to exercise reasonable care to protect his property from damage, but such a duty will not require him to undertake any extraordinary and costly construction, such as placing upon a building 50x100 feet, as shown in this case, a new roof. It is said in 24 Cyc. 1094, that:

"In the absence of express stipulation, a tenant has no right to make material or permanent alterations in the demised premises."

[10] And on page 1091 of the same author it is said:

"In the absence of statute or express agreement, the landlord is not liable to his tenant for repairs made by the latter to the demised premises, and is under no obligation to reimburse him for such expenditure."

We think these statements of law are applicable, and that appellee, under the circumstances, cannot he held liable for the want of an exercise of ordinary care in failing to repair or put a new roof on the building. We think he had a right to rely upon the repeated assurances and efforts of his landlord to repair the roof, and not himself undertake the burden of putting a new roof upon the building. We think it within a part of our common knowledge that a new roof on a building of the size shown cannot be constructed for the estimated sum stated by appellee. To undertake such a work might sub-

ject him to damages for some resulting injury to the building or on account of some injury negligently inflicted by the workmen. There is no stipulation in his rental contract that he should construct a new roof, and had he done so, according to the authority quoted, he would have had no legal right to recover the costs. We hence fail to find any reversible error in the action of the court in refusing to submit the quoted issue. Lovejoy v. Townsend, 25 Tex. Civ. App. 385, 61 S. W. 331; Oscar v. Sackville (Tex. Civ. App.) 253 S. W. 651; Stanley Manly Boys' Clothes, Inc., v. Hickey, 113 Tex. 482, 259 S. W. 160; Jones on Landlords and Tenants, § 410.

[11] We think we must also overrule appellants' objections to the testimony relating to the damages done to the stock of merchandise by reason of various leaks which appellee detailed, and to the amount of damages awarded appellee against Mrs. Waggoner. Appellee testified that the value of his stock of goods that he kept on hand varied from $35,000 to $60,000; that he thought his general average would be about $40,000 or $45,000. He further testified to numerous rains that had occurred since March 14, 1923 (within two years from the filing of his cross-action); that every time it rained it would leak in two or three dozen places; that the leaks caused all things in steel goods to rust, even if the rain did not fall directly on the articles, the moisture in the closed store would rust all polished steel; that articles that got wet would rust badly unless "we got to it and tried to clean it up, which we have done on several occasions in cutlery; that he had a bunch of hoes and rakes ruined, and had to sell them at reduced prices, and had a lot of saws, spades, shovels, forks, and stuff like that ruined; that they were wrapped in paper and it was not discovered that the rain had leaked on them until they were taken out and the damage found; that when goods were rusty or damaged by moisture they had to be sold at a reduction from 10 per cent. to 35 per cent.; that he sold "lots of stuff at reduced prices"; that taking into consideration such rains as had occurred since March, 1923, 15 per cent. of his goods had been damaged by dampness, leaks, etc.; that 15 per cent. was damaged about 33⅓ per cent. Appellee was asked if he could name the articles in his stock that had been damaged by rains since the 1st of April, 1923. In answer, he specified hoes, rakes, shovels, crosscut saws, forks, screen wire, galvanized wire, black screen wire, axes, ax handles, pick handles, maul handles, about 1,000 sheets of black iron, stovepipe, stoves, gas heaters, rope, counter items, such as nails, washers, bolts, chain, and things of that character. In stating these articles, the witness stated the value and reduced price at which he had been compelled to sell them.

Walter Scurr testified that the inventory value of the stock for the present year was $45,000; the cash market value $180,000, during the last three years; that they turned the stock over at least one time a year; that after every hard rain the stock as a whole would be in a turmoil from tubs being set around on the floor, which stayed damp practically all the time, and this in turn had the effect of rusting and damaging the goods; that his estimate of damage to the stock was from 33⅓ per cent. to 40 per cent.; and that damages to the stock as a whole would amount to from 9 per cent. to 10 per cent. This witness also detailed numerous articles that had been damaged, specifying the amount of damage done. The specific damage shown, item by item, aggregated $1,155. There was further testimony that:

"It was impossible to find all of the parts that were rusted, on account of the situation, when we went to sell them. We knew it was leaking down there, but it would be impossible to take everything out and wipe it off, raining that way. You could not tell until after you got ready to sell it whether it was damaged or not, but the whole, the south wall especially, is the one that got the damage done to it."

The lower court on the trial excluded all damages which had been sustained prior to March 14, 1923, on the ground that such damages were barred by the statute of limitation. No complaint is made of this ruling, and it is evident that the damages indicated by the testimony were limited to damages sustained after that date. There was no contradictory testimony given, and it would be unreasonable, as it seems to us, to require that each article in a stock of goods of the value of $45,000 should be examined and the precise damage thereto be given. This could only be done by taking an inventory, and it is not unreasonable by any means to conclude that from the number and extent of leakages shown that the dampness and moisture must have extended to a large part of the stock, as well as to the particular articles detailed.

In 13 Cyc. 211, subd. (e), it is said:

"If a party has stated not only that there is damage to his property, but in what particular such damages have arisen, it is permissible to allow him to make a general estimate of the amount, leaving it to the cross-examiner to develop the assumed amount of each item."

In the case of Bain v. Polasek (Tex. Civ. App.) 184 S. W. 279, the appellee testified that he had lost $144.10 by the failure of appellant to take his cotton. The court said:

"If appellant desired to know how he arrived at that result, he could have brought it out on the cross-examination, and he failed to do it. That evidence formed a sufficient basis for the judgment."

In 17 Corpus Juris, pp. 756–761, it is stated:

"The damages must be established with reasonable certainty. * * * Reasonable certainty is sufficient; absolute certainty is not re-

quired. * * * Damages are not uncertain for the reason that the loss sustained is incapable of proof with the certainty of a mathematical demonstration, or is to some extent contingent and not capable of being accurately determined. It is not sufficient reason for disallowing damages claimed that a party can state their amount only approximately. It is enough if from proximate certainty of witnesses a satisfactory conclusion can be reached."

See, also, Railway Co. v. Crabb (Tex. Civ. App.) 80 S. W. 408; Corpus Juris, 508.

We think the testimony complained of established the damages with as much certainty as could be reasonably expected under the circumstances of this case, and we conclude that the objections to the testimony and to the amount of damages found and adjudged should be overruled.

We conclude that no reversible error has been presented, and that all assignments and propositions upon which the appeal has been predicated should be overruled and the judgment affirmed.

BUCK, J., not sitting.