**O'NEAL FURNITURE COMPANY et al.,
Appellants,**

**v.**

**TYRRELL–WILSON INVESTMENT
COMPANY, Appellee.**

No. 5058.

Court of Civil Appeals of Texas.

Beaumont.

June 23, 1955.

Rehearing Denied Sept. 23, 1955.

Jack M. Moore, Beaumont, for appellants.

Strong, Moore, Pipkin, Strong & Nelson, Beaumont, for appellee.

R. L. MURRAY, Chief Justice.

The appellee, Tyrrell-Wilson Investment Company, a Texas corporation, brought this suit against appellants, O'Neal Furniture Company, a partnership composed of M. Greenspan and Otis Allen, and Greenspan and Allen, individually.

By the appellee's amended petition, on which it went to trial, it alleged that on or about August 29, 1947, appellants were in possession of certain premises belonging to appellee in the City of Beaumont, Jefferson County, Texas, as tenants of appellee,

and that on such day a written letter or memorandum of verbal negotiations for a new ten year lease was signed by all parties, the letter being set out in haec verba. That appellee made the repairs referred to in such letter at a cost of $13,091.65, same being completed on or prior to March 1, 1948, and that appellants accepted such improvements. Appellee then alleged that while such improvements were being constructed, it delivered to appellants a written lease contract in the same form and terms as its "Exhibit A" attached to its First Amended Original Petition, but that appellants never returned such lease contract, but permitted the appellee to continue with the construction of the improvements; and that such lease contract provided for the rental to begin March 1, 1948, in accordance with the letter memorandum dated August 29, 1947, including the amortization of the cost of improvements, amounting to $665 per month and that appellants paid such sum of money each month and occupied the premises from March 1, 1948, to July, 1953. That appellants were estopped to deny the validity of the letter memorandum and the unsigned lease agreement, "Exhibit A", by using said premises for such long period of time and paying the sum of $665 per month as rental, and also by such acts ratified both the letter memorandum and unsigned "Exhibit A". Appellee then closed with prayer for judgment for rent in the sum of $665 per month from August 1, 1953, to the date of trial, and further general and special relief.

Appellants by their First Amended Original Answer, specially excepted to appellee's pleading by four special exceptions, setting out inconsistencies in such pleadings and pleading the Statute of Frauds, a general denial, further specially pleaded that the letter memorandum was not an executed lease contract, but an executory agreement to enter into a lease contract at a later date; that the sum of $500 per month paid by appellants for October, November, December, 1947 and January and February, 1948, was a deposit made to appellee pending such construction and to be applied as a credit on the cost thereof; that appellants, after March 1, 1948, the date of re-entry in the premises, paid $500 rent, and during the months of March and April, 1948, paid $160 and $170 additional to make up rent of $500 per month on rental and $165 per month or amortization of improvements, as demanded by appellee, and that about the middle of May, 1948, the appellee submitted the proposed written lease, "Exhibit A", which was objected to by appellants and returned to appellee, who through its officers promised to correct such written lease when appellee's attorney returned to the City; that appellants continued to wait for such corrected lease from appellee until July, 1953, and continued to pay the money demanded by appellee pending such correction during such time. Appellants prayed for an accounting as to the money paid during such interim of time and for proper credits; appellants further specially pleaded the Statute of Frauds, that appellee from lack of diligence and admission of errors on its part was not entitled to equitable relief: The cross action of appellants was based upon the refusal of appellee in July of 1953 to execute a mutually agreeable lease contract in compliance with the letter memorandum, and the breach of such agreement to enter into a mutually agreeable lease resulting in damage to appellants in having to remove from such premises by reason of appellee's breach.

The appellee by its supplemental pleading interposed two and four year Statute of Limitations, Vernon's Ann.Civ.St. arts. 5526, 5529, and Statute of Frauds, Vernon's Ann.Civ.St. art. 3995, as to appellants' answer, and two and four year Statute of Limitations and Statute of Frauds as to appellants' cross action; and in further answer to appellants' cross action alleged failure of appellants to tender a written lease, a general denial, estoppel and failure of appellants to do equity.

The appellee's special exceptions were overruled and the cause went to trial on the above pleadings before the court without a jury. The court rendered judgment for appellee for the sum of $9,659.16.

The appellants have excepted and have duly perfected their appeal by a supersedeas bond. At the request of the appellants the trial court filed findings of fact and conclusions of law, which were as follows:

"Findings of Fact

"1

"That on and prior to August 29, 1947, M. Greenspan and Otis Allen, as partners in the firm known as O'Neal Furniture Company, were operating a furniture store on lots Nos. 416 and 417, Block 58, old Town of Beaumont in Jefferson County, Texas, located on the corner of Park and Forsythe Streets in said City and known also as 680, 690 and 692 Park Street and No. 506 Forsythe Street, and that such premises were so occupied and used under the terms of a ten-year lease from Tyrrell-Wilson Investment Company which expired by its terms on August 31, 1947.

"2

"That long prior to said date the parties entered into negotiations for another ten-year lease on said premises involving certain improvements which were to be paid for by lessees over the ten-year period by amortizing the same on a basis of six per cent (6%) interest per annum in addition to a base rental of Five Hundred ($500.00) Dollars per month net to the lessor and the cost of additional insurance and taxes over that paid in 1947.

"3

"That on August 29, 1947, the parties entered into the following letter agreement confirming such previous negotiations:

"'August 29th, 1947

" 'O'Neal Furniture Company
" '680 Park Street
" 'Beaumont, Texas

" 'Gentlemen:

" 'This letter is to confirm our verbal agreement of some ten days ago that we will execute a new 10-year lease on your present location on the corner of Park and Forsythe Streets, with the following commitments and considerations:

" '(1) An improvement program on the building which will be undertaken by this Company to comprise a general remodelling of the premises to cost approximately $10,-000.00, the details of which will be determined by mutual agreement.

" '(2) The above improvement program for rental purposes shall be amortized on a basis of 6% interest per annum.

" '(3) The consideration of this lease to be based on this Company's receiving a net return on the property of $500.00 a month, after amortization charges have been made.

" '(4) You agree to reimburse this Company for any increases in taxes or insurance on this property above those currently paid for 1947.

" '(5) You agree to make the property available to the contractor at an agreed date upon which the above construction program can be gotten under way and expeditiously carried forward.

" 'With no attempt to make this letter an all inclusive detailed contract, I have attempted to outline as clearly as possible the results of our several conferences concerning this lease. Should this outline meet with your approval, please execute both original copies, keeping one for your files and returning one to us.

" 'Yours very truly
" '/s/ Waldo Wilson
" 'Waldo Wilson

" 'WW :lr

" 'Approved and Accepted:

" 'O'Neal Furniture Company
" '/s/ M. Greenspan
" '/s/ Otis Allen.'

"3-a

"Based upon the acts of the parties as hereinafter found in retaining possession of the leased premises from and after September 1, 1947, and the payment for many years, without complaint or request for

explanations, of the increased base rental therefor by the defendants, and the acceptance of the increased rental by the plaintiff, the tenure of the lease referred to in such letter agreement was to be begun on the expiration of the old lease, to-wit: September 1, 1947.

"4

"That on and after September 1, 1947, the firm of O'Neal Furniture Company continued to occupy and do business upon said premises until about November 1, when said business was temporarily moved to another location and the premises involved were substantially but not completely vacated to permit the contemplated improvements to be made.

"5

"That said improvements were made and completed in accordance with the request and desires of the defendants and the cost thereof, to-wit: Thirteen Thousand Ninety-One and 21/100 ($13,091.21) Dollars, was approved for payment by defendants during the latter part of February, 1948, when the improvements were completed.

"6

"That from September 1, 1947, to the end of February, 1948, the defendants paid as rent for said premises the net base rental provided for in said letter agreement of Five Hundred ($500.00) Dollars per month, which amount was accepted and credited by plaintiff as the net base rental for such period. Such amount was not paid nor accepted as a deposit on the cost of improvements.

"7

"That on or about March 1, 1948, defendants reoccupied said premises as lessees, and from March 1, 1948 until July 31, 1953, paid such amounts as equal Six Hundred Sixty-five ($665.00) Dollars per month as rental for said property.

"8

"That on July 31, 1953, the defendants, in violation of said letter agreement, vacated said premises and refused to pay further rental thereon though often requested to do so by the plaintiff.

"9

"By virtue of the facts found above the defendants have, by their acts and by their long occupancy of said premises and by permitting plaintiff to act upon said letter agreement and construct said improvements and pay therefor and by their reoccupancy of said premises and the payment of the rental demanded by plaintiffs for more than five years, ratified and confirmed said letter agreement as a lease of said premises for a period of ten years and are estopped to deny that said letter agreement was a binding, valid lease contract for such period of ten years and that all amounts paid by them to the plaintiff were paid as rent for said property.

"10

"I find that the average cost per month to the plaintiff of fire and extended coverage insurance on Thirteen Thousand ($13,000.00) Dollars worth of improvements placed on the leased premises at the request and for the benefit of O'Neal Furniture Company equals a monthly amount of Twelve and 65/100 ($12.65) Dollars per month.

"11

"I find that there is due to the plaintiff, in addition to the five Hundred ($500.00) Dollars per month base rent paid as hereinbefore found, for the period from September 1, 1947, to March 1, 1948, the sum of One Hundred Nine and 10/100 ($109.10) Dollars per month, that being the amount of principal payment per month over a period of ten years required to pay a principal of Thirteen Thousand Ninety-one and 65/100 ($13,091.65) Dollars; that for such period of six months there accrued Six Hundred Fifty-four and 60/100 ($654.60) Dollars; that plaintiff is entitled to such amount, with interest, as the same accrued at the rate of six per cent (6%) per annum to the 1st day of October, 1954, which sum with interest equals Nine Hundred Twenty-four and 63/100 ($924.63) Dollars.

**"12**

"I find that on March 1, 1954, plaintiff had paid out for the improvements on the leased premises the sum of Thirteen Thousand Ninety-one and 65/100 ($13,091.65) Dollars, which amount less the Six Hundred Fifty-four and 60/100 ($654.60) Dollars allowed to the plaintiff in the previous finding, or a total of Twelve Thousand Four Hundred Thirty-seven and 05/100 ($12,537.05) Dollars, should be amortized over the remaining period of said lease, to-wit: One Hundred Fourteen (114) months at six per cent (6%) interest, which amount would require a payment of One Hundred Forty-three and 39/100 ($143.39) Dollars monthly to pay the same off.

**"13.**

"I find that the monthly rental which should have been charged the defendants under the terms of said letter agreement should be computed in accordance with Exhibit A prepared by B. H. Hughes, C.P.A., and introduced and verified by him at the hearing on motion for judgment, which Exhibit A is attached hereto and made a part hereof for all purposes, and which computation shows that the monthly rental should have been Six Hundred Fifty-six and 04/100 ($656.04) Dollars per month.

**"14**

"The Court finds that the written lease contract attached to plaintiff's petition as Exhibit A was never mutually agreed upon, signed or approved by the parties as a completed binding contract between the parties.

**"15**

"The Court finds that the only written contract concerning the lease of said premises tendered by the plaintiff to the defendant other than the letter agreement dated August 29, 1947, which was executed by both parties, was the contract attached to plaintiff's petition and marked Exhibit A.

**"16**

"The Court finds that in 1953, the defendants requested the execution of a lease covering the remainder of the terms and providing for a ten-year renewal option and allowing a credit to the defendants of Twenty-five Hundred ($2,500.00) Dollars, which they claimed had been paid as a deposit on the cost of improvements, and the plaintiff refused to prepare and sign any lease contract on such terms or upon any terms except those incorporated in Exhibit A attached to plaintiff's petition and, the letter agreement dated August 29, 1947, with appropriate corrections of the date of commencement and termination and to change the nature of the defendants' organization from that of a corporation to that of a partnership, and at such time defendants refused to execute any lease which did not allow full credit of Twenty-five Hundred ($2,500.00) Dollars on the cost of improvements and which did not contain a ten-year renewal option and which did not credit them with full payment for the improvements and allow a reduction in rent.

**"17**

"I further find that at such time defendants did not offer to execute a lease agreement on the terms of said letter agreement dated August 29, 1947.

**"Conclusions of Law**

"I make the following Conclusions of Law applicable to this case:

**"1**

"That under the terms of the verbal agreement between the parties and said letter agreement and in accordance with the acts of the parties thereunder, said letter agreement constituted a valid lease contract binding between the parties and not in contravention of the statute of frauds and commenced on September 1, 1947.

**"2**

"I conclude that from the terms of said letter agreement plaintiff is entitled to reimbursement for the cost of insurance above that paid in 1947 or an average amount of Twelve and 65/100 ($12.65)

Dollars per month; but that plaintiff is not entitled to be paid any increase in taxes above those paid in 1947 for the reason that same were paid because of rate increases and not because said improvements were placed upon said leased premises.

"3

"That the amount due the plaintiff under the terms of said letter agreement should be computed in accordance with the figures shown on Exhibit B prepared by B. H. Hughes, C.P.A., and introduced and verified by him at a hearing on motion for judgment, and which Exhibit B is attached hereto and made a part hereof for all purposes, which computation properly adjusts between the parties all credits and offsets that each party is entitled to receive and shows that under the terms of said letter agreement Tyrrell-Wilson Investment Company was entitled to a net amount of Nine Thousand Seven Hundred Seventy-five and 09/100 ($9,775.09) Dollars.

"4

"That Tyrrell-Wilson Investment Company in its petition sued for Six Hundred Sixty-five and no/100 ($665.00) Dollars per month from August 1, 1953, to October 1, 1954, which amount with accrued simple interest at six per cent (6%) is less than the amount which Tyrrell-Wilson Investment Company would be entitled to under the terms of said letter agreement as found in the next above conclusion, and accordingly Tyrrell-Wilson Investment Company under its pleadings is entitled to Six Hundred Sixty-five ($665.00) Dollars per month from August 1, 1953 to October 1, 1954, or a total of Nine Thousand Six Hundred Fifty-nine and 16/100 ($9,659.16) Dollars, the computation of which is shown by Exhibit C, also prepared by B. H. Hughes, C.P.A., and introduced and verified by him at the hearing on motion for judgment, and which Exhibit C is attached hereto and made a part hereof for all purposes.

"5

"I conclude that since the new lease was to begin on September 1, 1947, and since all amounts paid by defendants to plaintiff were paid as rent for said premises that defendants are not entitled to the offsets plead of Five Hundred ($500.00) Dollars per month from September 1, 1947, to March 1, 1948.

"6

"I conclude that the defendants are not entitled to recover under their cross-action.

"7

"The Court concludes as a matter of law that the written lease contract attached as Exhibit A to plaintiff's petition was never signed by both parties and has no binding legal effect on the parties hereto.

"8

"I conclude that the defendants have by their acts and by long occupancy of the premises and the continued payment of the rental therefor until July, 1953, and by permitting the plaintiff to act on said letter agreement and construct said improvements and pay therefor, and by their reoccupancy of said premises and payment of the rental demanded by plaintiff for more than five years, ratified and confirmed the letter agreement as a lease and have by their performance thereof, accepted their obligation under said letter agreement as a lease for ten years on the terms specified therein and that said defendants are estopped to deny that such letter agreement was a binding, valid lease for such period of ten years and that all amounts paid by them to the plaintiff were paid as rent for said property.

"9

"I further conclude that the defendants' removal from said premises on July 31, 1953, was in violation of the term of said letter agreement and was unjustified and constituted a breach of their agreement for a ten-year lease under the terms of said letter agreement."

The appellants bring their appeal under 32 Points of Error. These points are

lengthy and detailed, extending through 11 pages of the brief, and we will not set them out in detail but will give the substance of each point, as follows:

Point 1 complains that the trial court erred in concluding as a matter of law that the letter memorandum dated August 29, 1947 constituted a valid lease contract, not in contravention of the Statute of Frauds, and commenced on September 1, 1947, "because as a matter of law such memorandum was executory only, nothing stated therein as to commencement date, and all of the evidence of appellee and admission of appellee are to the contrary." Points 2, 3, 4, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, and 18 all complain of various findings of fact and say that the evidence is to the contrary. Points 5, 6, 19, 20, 21, 22, 23, 24, 31, and 32 complain of the various conclusions of law made by the trial court. Points 25 and 26 complain that the court's judgment is not supported by pleadings of the appellee, since the judgment is based upon a letter memorandum and estoppel and the appellee sued upon a written contract, a copy of which was attached to their petition; and because appellee sued on a written contract of lease, and did not plead in the alternative for judgment in equity upon a written memorandum. Points 27, 28, 29 and 30 complain of the trial court's action in overruling their various special exceptions to the petition of the appellee.

We have read the entire statement of facts and do not agree with the contentions of the appellants that the court's findings of fact are not supported by the evidence or are contrary to the evidence. It was established without question by the undisputed evidence that all of the findings were correct as found by the court in paragraphs 1, 2, 3, 4, 5, 6, 7, 8, 12, 15, and 17.

The finding in paragraph 9 is that by virtue of the facts found, by their acts, by their long occupancy of said premises and by permitting the appellee to act upon said letter agreement and construct said improvements and pay therefor, and by their reoccupancy of the premises and the payment of the rental demanded by appellee for more than five years, the appellants have ratified and confirmed said letter agreement as a lease of said premises for a period of ten years and are estopped to deny that said letter agreement was a binding, valid lease contract for such period of ten years and that all amounts paid by them to the appellee were paid as rents for said premises. The evidence is that the appellants carried these payments as rentals on their books and so reported them in their annual income tax statements and returns and that the appellee also carried such payments as rentals and so reported them in its income tax returns. The other facts found in previous fact findings by the trial court also substantiate this finding of fact.

The other findings in regard to payments due appellee are supported by the evidence, although there is some conflict therein. The trial court was the trier of the facts and his finding on conflicting evidence will not be disturbed.

A curious fact in connection with the dealings between these litigants is that Mr. Waldo Wilson, president of the appellee company, was under the impression during the five years ensuing after the negotiations and letter of August, 1947, that a signed lease between the parties was in existence. He had a lease prepared very similar in its provisions to the lease in existence between the parties which expired in August, 1947, and sent it to the appellants for signature. It was not signed and appellant Greenspan called him and requested two corrections as to the lease form. O'Neal Furniture Company was then a partnership, and not a corporation; he wanted the change made to designate the lessee as such partnership and he also preferred not to have a cancellation clause in the lease. Mr. Wilson then stated that he would confer with his attorney and have it attended to when his attorney returned to the city. This never was done and he apparently forgot all about it. Not until five years later, in 1953, did he learn that no lease had ever been signed. At that time Mr. Greenspan called upon him ask-

ing that the rent be reduced, saying that business was off and that he was unable to continue to pay as he had been paying for five years. It was at this time that he notified Mr. Wilson that no lease had been signed. This does not relieve appellants of liability.

■ We believe the trial court's conclusions of law and his judgment in favor of the appellee against the appellants were correct. The law seems to be well settled in this State that a written agreement such as the letter written by appellee to the appellants, and accepted by them by their actions thereafter, constitutes a fully binding contract of lease between the parties, and will be enforced as such, unless there was some agreement that it would not be effective until a written detailed lease agreement was executed, or unless from all of the surrounding circumstances the intention of the parties is clear that the agreement will not become effective until a written agreement was signed. See Halsell v. Scurr, Tex.Civ.App., 297 S.W. 524; Wukasch v. Hoover, Tex.Civ.App., 247 S. W.2d 593; Hoover v. Wukasch, 152 Tex. 111, 254 S.W.2d 507; Sorrells v. Goldberg, 34 Tex.Civ.App. 265, 78 S.W. 711; Tinsley v. Metzler, Tex.Civ.App., 44 S.W.2d 820; Dockery v. Thorne, Tex.Civ.App., 135 S. W. 593; Miller v. Nacol, Tex.Civ.App., 224 S.W.2d 734; Matthewson v. Fluhman, Tex.Com.App., 41 S.W.2d 204. Since the court's findings in favor of appellee on its suit against appellants are upheld by us, we also conclude, as did the trial court, that appellants could not recover on their cross-action.

■ All of the appellants' points which complain of the fact findings, conclusions of law and judgment are overruled.

■■ We find no error in appellants' points in regard to the action of the trial court in overruling their special exceptions to the pleadings of appellee. Under these points the appellants say that appellee's pleading, on its face, admitted errors by it in improperly drawing a lease and the pleading was upon the unsigned lease prepared by appellee, while the trial court entered judgment eventually on the letter agreement between the parties. It appears to us that the pleading of the appellee pleaded the latter agreement, the preparation and tender of the unsigned lease agreement and all of the negotiations and subsequent acts of the parties as a basis for their cause of action against the appellants. Such a pleading did not deny to the appellee the intervention of equity in its behalf and the court did not err in overruling these special exceptions by which the appellants so contended. It appears certain that under the facts of this case, the negotiations, the letter of agreement and the actions of the parties in making repairs to the building and the making and accepting of rental payments as outlined in the letter, such payments and acceptances extending over a period of five years, had the appellee attempted to oust the appellants from such premises under a contention that no lease existed the law would not have permitted the appellee to do so, but would have required that it permit the appellants to continue occupying the premises for the full term of ten years after 1947, the date when the old lease expired. A lease agreement in favor of the tenants would have been upheld. It would amount to virtually a fraud upon either one of these parties to permit the other to act in any way except upon the assumption that a valid lease agreement existed between them, under all the facts and circumstances.

All of the appellants' points are overruled without an extensive discussion, and the judgment of the trial court is affirmed.